**EDELSBERG LAW, P.A.**
Scott Edelsberg
California Bar No. 330990
scott@edelsberglaw.com
Aaron M. Ahlzadeh, Esq.*
Florida Bar No. 111329
aaron@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: (305) 975-3320
*Pro hac vice forthcoming

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis*
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
*Pro hac vice forthcoming

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER REGALA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No.: **'20CV1910 JM   MDD**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Jennifer Regala, on behalf of herself and all others similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff, and on information and belief as to other allegations.

1

CLASS ACTION COMPLAINT

## INTRODUCTION

1.    Plaintiff brings this action on behalf of herself, the general public, and Class of all similarly situated consumers against Defendant JPMorgan Chase Bank, N.A. ("Defendant," "Chase," or "Bank"), arising from its routine practice of assessing overdraft fees ("OD Fees") on transactions that did not actually overdraw the customer's account.

2.    Chase misleadingly and deceptively misrepresents the above practice in its publicly available marketing materials, including its own account contracts. Chase also omits material facts pertaining to this practice in its publicly available marketing materials, including its account contracts.

3.    Chase's customers have been injured by Chase's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Chase.

4.    In addition, the deception, aimed at general public, continues to this day. Chase's contracts (including the Deposit Account Agreement and the Fee Schedule) and marketing materials (including the Standard Overdraft Practice disclosure) are publicly available online and in Chase branches to all current and prospective accountholders. The general public relies on representations in these documents in making important financial decisions regarding with whom they would like to open a checking account. Consumers who have already opened accounts also rely on the misrepresentations and omissions in the publicly available account documents when making every day financial transactions.

5.    The Pew Charitable Trusts has emphasized the importance of transparent

2

CLASS ACTION COMPLAINT

checking account fee disclosures for both comparison shopping for checking accounts and for effective fee avoidance:

> Bank accounts are an essential financial product, used by 9 in 10 American households, and need to be safe and transparent. Account agreements and fee schedules provide customers with account costs, terms, and conditions. Among the largest U.S. banks, however, the median length of checking account disclosure documents is 40 pages, and the information is presented in varied formats with inconsistent wording, making it difficult for consumers to easily find the information they need to comparison shop, avoid overdraft and other fees, and manage their money.

The Pew Trusts, "The Benefits of Uniform Checking Account Disclosures."

6.     Members of the public considering opening a checking account have the right to accurate information regarding the checking accounts they are considering.  Research shows that fees are the most important factor influencing consumers' selection of a new banking provider. *See* Ron Shevlin, "How Consumers Choose a Bank: A Tale of Two Surveys." Insight Vault, Cornerstone Advisors, 23 Aug. 2018, www.crnrstone.com/insightvault/2018/08/23/how-consumers-choose-a-bank-a-tale-of-two-surveys/ (summarizing two consumer surveys that revealed that the most important factor influencing consumers' selection of a new banking provider is the amount of fees charged); Claire Greene and Joanna Stavins, The 2016 and 2017 Surveys of Consumer Payment Choice: Summary Results. Federal Reserve Bank of Boston, 10 May 2018, www.bostonfed.org/publications/research-data-report/2018/the-2016-and-2017-surveys-of-consumer-payment-choice-summary-results.aspx (finding that 4 in 10 consumers who did not have a bank account cited expense as the reason, including "fees and service charges

are too high.").

7.      Reasonable consumers would not agree to open Chase checking accounts or would not agree to opt-in to Chase's overdraft services, if they were informed, for example, that they could incur overdraft fees on transactions that did not overdraw their account.

8.      On behalf of herself, the general public, and the Class, Plaintiff seeks damages, restitution, and public injunctive relief due to Chase's breach of contract and violations of California's consumer protection laws

## PARTIES

9.      Plaintiff Jennifer Regala is a citizen and resident of San Diego, California and holds a Chase checking account.

10.     Defendant JPMorgan Chase Bank, N.A. (referred to herein as "Chase", "Defendant," or "Bank") is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the Class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Chase operates banking centers and branches across the State of California and the nation, and thus, it conducts  business throughout California and the United States.

## JURISDICTION AND VENUE

11.     Chase regularly and systematically provides retail banking services throughout the State of California, including in this county, and engages in marketing and providing retail banking services to its customers, including Plaintiff and members of the putative Class, throughout the State of California, including in this county. As such, Chase

CLASS ACTION COMPLAINT

is subject to the personal jurisdiction of this Court.

12.     The Court has original jurisdiction over this suit pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6), because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Chase.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Chase is subject to personal jurisdiction in this District, Chase regularly conducts business in this District, and because Plaintiff was assessed overdraft fees in this District, as discussed herein.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.    Chase Charges Overdraft Fees On Transactions That Do Not Actually Overdraw The Account**

### A. Overview of Claim

14.     Plaintiff brings this cause of action challenging Chase's practice of charging overdraft fees ("OD Fees") on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions," or "APPSN Transactions."

15.     Here is how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Chase immediately reduces a consumer's checking account for the amount of the purchase, sets aside funds in the checking account to cover that specific transaction, and as a result, the consumer's

CLASS ACTION COMPLAINT

displayed "available balance" reflects that subtracted amount. As a result, a customer's accounts will always have sufficient available funds available to cover these transactions because Chase has already sequestered those funds for payment.

16.     Chase, nonetheless, still assesses a crippling $32.00 OD Fee on many of these transactions and mispresents its practices in its account documents.

17.     Despite putting aside sufficient available funds for a particular debit card transaction at the time the transaction is authorized, Chase later assesses OD Fees on those same transactions when they purportedly settle, usually days later, into a negative account balance. These types of transactions are APPSN transactions.

18.     Chase maintains a running account balance in real time, tracking the amount of funds that consumers has available for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Chase sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

19.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it eventually settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

20.     It means that when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. Thus, many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

21.     Still, despite keeping those sequestered funds off-limits for purposes of covering other transactions, Chase improperly charges OD Fees on those APPSN Transactions—even though the APPSN transactions *always* have sufficient available funds to be "covered."

22.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, specifically calling the practice "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one

7

CLASS ACTION COMPLAINT

or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

23.    There is no justification for these practices, other than to maximize Chase's overdraft fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Chase is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But Chase was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

CLASS ACTION COMPLAINT

24.     Besides being deceptive, unfair, and unconscionable, these practices breach contract promises made in Chase's adhesion contracts—contracts which fundamentally misconstrue and mislead consumers about the true nature of Chase's processes and practices. These practices also exploit contractual discretion to gouge consumers.

25.     In plain, clear, and simple language, the checking account contract documents covering overdraft fees promise that Chase will only charge overdraft fees on transactions that have insufficient funds to "cover" that transaction.

26.     In short, Chase is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

## B.     Mechanics of a Debit Card Transaction

27.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Chase. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to Chase, which then verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

28.     At this point, if the transaction is approved, Chase immediately decrements the funds in a consumer's account and sequesters funds equal to the amount of the transaction; but it does not yet transfer the funds to the merchant.

29.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of

CLASS ACTION COMPLAINT

the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

30.     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account. This is referred to in the banking industry as "posting" or "settling"—something which may occur several days after the transaction was first initiated.

31.     There is no change—no impact whatsoever—to the available funds in an account when posting or settling a transaction in the same amount for which it was initially authorized. That is because available funds amounts do not change for debit card transactions that settle in the same amount for which they were authorized.

**C.   Chase's Deposit Account Agreement**

32.     Plaintiff  has a Chase checking account, which is governed by Chase's standardized Deposit Account Agreement.

33.     The standardized Deposit Account Agreement is a publicly available document that can be obtained online or at Chase's branches or banking centers, where it is available to all current and prospective accountholders. Consumers, and the general

public, rely on account agreements like Chase's in making important financial decisions regarding to whom they would like to entrust their money. In addition, Chase accountholders rely on the Consumer Deposit Account Agreement in making every day financial transactions and predicting which transactions will incur fees and for how much.

34.     In plain, clear, and simple language, the Deposit Account Agreement promises that Chase Bank immediately deducts funds, or places a hold on funds, at the very moment debit card transactions are initiated; and will only charge OD Fees on transactions with insufficient available funds to pay a given transaction:

> **Available balance**: Your previous day's balance plus any pending credit transactions (excluding pending debit card purchase returns), such as ACH direct deposits minus: •**Pending charges such as debit card purchases, electronic payments or other transactions that we are legally obligated to pay or have already paid,** •Amount of deposits that are not yet available for withdrawal under our Funds Availability Policy, •Any holds on your balance, such as holds on funds to comply with court orders or other legal requirements.

Deposit Account Agreement, attached hereto as **Exhibit A**, at pg. 2 (4 of 30).

> […]

> Withdrawals and transfers from your account
> We may subtract from your balance the amount of any check or other item that you or any person you authorize[,] created or approved.

Ex. A at pg. 4 (6 of 30).

> […]

CLASS ACTION COMPLAINT

<u>Overdrafts</u>

**We may pay or decline to pay any item if your available balance is less than the amount of that item plus all other items received but not yet paid. We will decline any requested ATM withdrawal unless your available balance at the time is equal to or more than the amount of the requested withdrawal**. Even if we've paid overdraft items before, we are not required to do it in the future. Special rules for everyday debit card transactions are described in the Electronic Funds Transfer Service Terms…**We look at your balance only once to decide if the item would cause an overdraft**. Generally, for each business day, we will first add deposits to your account. Second**, we will subtract** wire transfers, everyday debit card transactions, online banking transactions, ATM withdrawals, teller cash withdrawals, and checks you wrote that are either cashed or deposited at a teller station by a Chase employee, **in the order in which they are authorized, withdrawn, cashed or deposited.**

Ex. A at pg. 7 (9 of 30).

[…]

We will charge a fee for any item presented on a business day when your account is overdrawn, whether or not we pay the item. If we pay it, we will charge an Insufficient Funds Fee. If we return it, we will charge a Returned Item Fee. The fee will be listed as a Returned Item Fee if we initially decide to return the item but later decide to pay it.

Ex. A at pg. 7 (9 of 30).

[…]

Overdraft Protection Overdraft Protection allows you to link one of your accounts as your backup account to your checking account to help pay an overdraft. If your checking account does not have enough money, we will use the available funds from your backup account to authorize or pay transactions.

Ex. A at pg. 7 (9 of 30).

CLASS ACTION COMPLAINT

35.     The Deposit Agreement misleads current and prospective accountholders regarding Chase's true debit card processing and OD Fee practices in at least four ways.

36.     **First**, Chase's definition of "available balance" reflects that debit card transactions take place in two parts and that funds are immediately deducted from an available balance for "pending" debit card transactions. Indeed, available funds actually are sequestered at the moment a debit card transaction is approved by Chase Bank.

37.     Chase may thus not assess OD Fees on APPSN transactions, since by definition those transactions have sufficient available funds at the moment they are authorized and the entire time they are "pending."

38.     **Second**, Chase states that "we may pay or decline to pay any item if your available balance is less than the amount of that item plus all other items received but not yet paid."  This is a representation to reasonable consumers that Chase decides whether or not a transaction is an "overdraft" transaction at the moment a debit card transaction is authorized.  That is because Chase can decide to "pay or decline to pay" such a transaction only at the moment of authorization.  Once it authorizes a debit card transaction, it must pay that transaction when it settles, no matter what.

39.     In short, Chase promises that it will make overdraft fee determinations at the time of authorization.  That means that APPSN Transactions rightly cannot incur overdraft fees.

40.     **Third**, Chase explicitly states that: "We look at your balance only once to decide if the item would cause an overdraft."  Because Chase necessarily "looks at [the]

balance" at the time of authorization, Chase represents it will not later charge overdraft fees on a transaction authorized into positive funds.

41.     In reality, Chase's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and at the time of settlement.  Then Chase makes that determination again, at settlement.

42.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds.  As such, Chase cannot then charge an OD Fee on such a transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

43.     Upon information and belief, something more is going on:  at the moment a debit card transaction is getting ready to settle, Chase does something new and unexpected, during the middle of the night, during its nightly batch posting process.  Specifically, Chase releases the hold it had placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

44.     This secret step allows it to charge overdraft fees on transactions that never should have gotten them—transactions that were authorized into sufficient funds, and for which Chase specifically set aside money to pay them.

45.     This discrepancy between Chase's actual practices and the contract causes consumers to incur more OD Fees than they should.

CLASS ACTION COMPLAINT

46.   **Fourth**, Chase promises it will "subtract" debit card transactions from accounts "in the order in which they are authorized."  But it does not do this for APPSN transactions.  Instead, it allows intervening debit transactions to be withdrawn from an account's available balance first.  Indeed, these intervening, out-of-order debits are the precise reason there can be APPSN Transactions in the first place.

47.   In sum, there is a vast discrepancy between Chase's practices as described in the account documents and the Chase's practices in reality. This gap is designed to and does deceive current and prospective account holders.

48.   Chase's misrepresentations and omissions are ongoing, and negatively affect not only current account holders' ability to manage their funds, but also deceive members of the general public who have no choice but to rely on Chase's publicly available statements in making important decisions regarding who to bank with, what kinds of accounts to open, and what transactions to make. Current and prospective bank customers have a right to know what they can expect from the institutions they entrust with their money, especially if what they can expect are excessive overdraft fees on transactions that do not actually overdraw their accounts.

**D.  Chase Abuses Contractual Discretion**

49.   Chase's treatment of debit card transactions to charge overdraft fees is not simply a breach of the express terms of the numerous account documents. In addition, Chase exploits contractual discretion to the detriment of accountholders when it uses these policies.

50.     The terms, "hold" and "to cover" a transaction, are not defined in the account documents. Chase uses its discretion to define "hold" and "to cover" in a manner contrary to any reasonable, common sense understanding of those terms. In Chase's implied definition, a transaction is not "covered" even if Chase sequesters sufficient available funds for that transaction.

51.     Moreover, Chase uses its contractual discretion to cause APPSN Transactions to incur overdraft fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

52.     Chase uses all of these contractual discretion points unfairly to extract overdraft fees on transactions that no reasonable consumer would believe could cause overdraft fees.

**Plaintiff's Debit Card Transactions**

53.     On numerous occasions, Plaintiff was charged overdraft fees in connection with debit card transactions that settled on the day she was assessed the fee, despite the fact that positive funds were deducted immediately, prior to the day she was assessed the fee. At the time that the positive funds were deducted, Plaintiff had a positive balance, which would not have caused an OD Fee.

**CLASS ACTION ALLEGATIONS**

54.     Plaintiff brings this action on behalf of herself and all others similarly situated. The Class includes:

All holders of a Chase checking account in California who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged OD Fees on transactions that were authorized into a positive available balance (the "APPSN Class" or the "Class").

55.     Excluded from the Class are Defendant, their subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

56.     Plaintiff reserves the right to modify or amend the definition of the proposed Class herein, and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

57.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual class members because Chase has acted on grounds generally applicable to the class members.. Such common legal or factual questions include, but are not limited to:

   a)  Whether Chase improperly charged OD Fees on APPSN Transactions;

   b)  Whether such conduct enumerated above violates the contract;

   c)  Whether such conduct is deceptive or in bad faith;

   d)  Whether Plaintiff and other members of the Class have sustained damages as a result of Chase wrongful business practices described herein, and the proper measure of damages; and

CLASS ACTION COMPLAINT

e) Whether Chase's fee disclosures are deceptive and misleading to both its Bank customers and the general public.

58.     The parties are so numerous such that joinder is impracticable.   Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Chase's records. Chase has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

59.     It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

60.     Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices by Chase, as described herein.

CLASS ACTION COMPLAINT

61.     Plaintiff is more than an adequate representative of the Class because she has a Chase checking accounts and has suffered damages as a result of Chase's improper business practices. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself, and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b) There is no conflict of interest between Plaintiff and the unnamed Class members;

c) They anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

62.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

63.     Chase has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

64.     All conditions precedent to bringing this action have been satisfied and/or waived.

## **DESCRIPTION OF PUBLIC INJUNCTIONS SOUGHT**

65.     Plaintiff seeks a public injunction on behalf of herself and the public prohibiting Chase from making material omissions and misrepresentations to the public as

to the nature and amount of the fees that it assesses on its customers.

66.     Fees are one of the most important factors that consumers take into account when deciding whether to open a checking account, and which financial institution to bank with. The public has the right to a transparent marketplace in which banks are open and honest about the number, nature, and amount of fees they charge, and the circumstances under which those fees are assessed.

67.     The injunctive relief sought by Plaintiff will protect the public from Chase's deceitful marketing practices which lure customers in by understanding the amount and frequency it assesses OD Fees. It will prevent Chase from distorting the marketplace by representing that it charges fewer fees than it actually does.

68.     Plaintiff seeks to enjoin Chase from misrepresenting and/or omitting material information as to its fee assessment practices in the documents that it makes available to the public.

## FIRST CAUSE OF ACTION
**Breach of Contract, Including Breach of the Implied Covenant
of Good Faith and Fair Dealing
(On behalf of Plaintiff and the Class)**

69.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

70.     Plaintiff and Chase contracted for checking account and debit card services, as embodied in the Account documents.

71.     Chase breached the contract when it charged overdraft fees on APPSN transactions.

72.     Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the Deposit Account Agreement.

73.     Plaintiff and members of the putative Class have sustained monetary damages as a result of Defendant's breach.

74.     Under the laws of the State of California, where Chase does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

75.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

76.    Chase breached the covenant of good faith and fair dealing through its OD Fee policies and practices as alleged herein.

77.    Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Account Agreement.

78.    Plaintiff and members of the Class have sustained damages as a result of Chase's breach of the contract and breach of the covenant of good faith and fair dealing.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of Plaintiff and the Class)**

79.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

80.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Chase's conduct related to the imposition of overdraft fees violated each of this statute's three prongs.

81.    Chase committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it affirmatively and knowingly misrepresented its OD Fee practices as described herein. Chase's representations are likely to mislead the public with regard to when Chase imposes overdraft fees and when it does not.

CLASS ACTION COMPLAINT

82.     Plaintiff relied on Chase's misrepresentations to her detriment. Had she known that Chase would charge OD Fees on APPSN transactions, Plaintiff would not have banked at Chase and/or would not have opted-in to Chase's overdraft services.

83.     As a direct and proximate result of Chase's unfair and deceptive practices, Plaintiff and the Class members have suffered and will continue to suffer actual damages.

84.     As a result of its unfair and deceptive conduct, Chase has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

85.     In addition, Chase's conduct continues to deceive the general public. Chase's misrepresentations and omissions in its publicly available account documents and marketing materials are likely to deceive current and prospective accountholders making corresponding public injunctive relief necessary.

86.     Plaintiff also seeks an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that a judgment is entered against Defendant for herself and the Class members as follows:

(a)     Declaring Chase's OD Fee policies and practices to be wrongful, unfair, and a breach of contract;

(b)     A public injunction that enjoins Chase from continuing to misrepresent its OD Fee policies in its publicly available account documents and marketing materials;

(c)    Restitution of all relevant OD Fees paid to Chase by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

(d)    Disgorgement of the ill-gotten gains derived by Chase from its misconduct;

(e)    Actual damages in an amount according to proof;

(f)    Statutory, punitive, and exemplary damages, as permitted by law;

(g)    Pre-judgment interest at the maximum rate permitted by applicable law;

(h)    An order on behalf of the general public enjoining Chase from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint and any other acts and practices proven at trial;

(i)    Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

(j)    Such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands, on behalf of herself and all other similarly situated class members, a trial by jury on all issues raised in this complaint that are so triable as a matter of right.

DATED: September 24, 2020

Respectfully submitted by:

*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
California Bar No. 330990
scott@edelsberglaw.com
Aaron M. Ahlzadeh, Esq.*
Florida Bar No. 111329
**EDELSBERG LAW, PA**

24

aaron@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: (305) 975-3320
*Pro hac vice forthcoming*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.*
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
*Pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

1

## EXHIBITS: TABLE OF CONTENTS

2

Exhibit 1      Deposit Account Agreement (pgs. 1 – 30)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT A



# Deposit Account Agreement
# Privacy Notice
# How to Contact Us

Important legal information, disclosures and terms you should know

Issue Date:
## NOV 2017

# Table of Contents

**DEPOSIT ACCOUNT AGREEMENT** ...................................................................................2

**General Account Terms** .............................................................................................3

  A. Deposits and Checks You Cash ...................................................................3

  B. Checks, Withdrawals, Transfers and Other Account Charges .........................4

  C. Overdrafts and Fees; Overdraft Protection; Setoff and Security Interest ...............7

  D. CDs ....................................................................................................................8

  E. Statements, Notice of Errors, and Other Notices .........................................9

  F. Forms of Account Ownership ......................................................................10

  G. Interest on Checking and Savings Accounts .............................................13

  H. Closing Your Account ..................................................................................13

  I.  Other Legal Terms .......................................................................................13

**Substitute Checks and Your Rights** ........................................................................18

**Electronic Funds Transfer Service Terms** ..............................................................18

  A. Types of EFT Services .................................................................................18

  B. Important Information and Agreements about Your Card ...........................20

  C. Limitations on Transfers, Amounts, and Frequency of Transactions ...........21

  D. Receipts and Statements ............................................................................21

  E. In Case of Errors or Questions about Your Electronic Funds Transfers ...........21

  F.  Our Liability for Failure to Complete Transactions .....................................22

  G. Preauthorized (Recurring) Transfers and Stop Payments ...........................22

  H. Disclosure of Account Information to Third Parties ...................................22

  I.  Notice of Your Rights and Liabilities ...........................................................23

  J.  Fees .............................................................................................................23

  K. Services Not Covered by This Part; Separate Agreements ...........................23

**Account Alerts and Text Banking** ...........................................................................23

**Funds Availability Policy** .......................................................................................24

**PRIVACY NOTICE** ...................................................................................................26

**HOW TO CONTACT US** ....................................................................... **BACK COVER**

# Welcome to Chase

Thank you for opening your account with Chase; we look forward to serving you. Please keep this agreement for answers when you need them.

# About this Booklet

This booklet (may also be referred to as Account Rules and Regulations) contains the following three sections.

# Deposit Account Agreement

This section is your Deposit Account Agreement, or contract, with us.

The Deposit Account Agreement also includes these separate documents that pertain to our personal and business accounts:

- Rates for interest-bearing accounts
- Personal accounts:
    - Consumer Banking Products: Additional Banking Services and Fees (including our Fee Schedule)
    - Chase Private Client Products: Deposit Products and Services
- Business accounts:
    - Additional Banking Services and Fees (including our Fee Schedule)
- Any additional disclosures, such as amendments or agreements, that we provide to you either when you open your account or when we change the terms of your account.

# Privacy Notice

The Privacy Notice explains how we keep information about you private and secure, and what choices you have pertaining to how we use your information.

# How to Contact Us

We're always here for you. The back cover of this agreement shows how to reach us.

# *Deposit Account Agreement*

This agreement is the contract that governs your account.

Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase"). By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement. Customers of some of our business groups, such as Corporate Banking, will get a different agreement and their accounts will be governed by that agreement, not this one. If you have a product that is not a deposit account, such as a prepaid card or credit card, this agreement does not apply to that product. Also, other products or services, such as online banking or retirement accounts, may have additional agreements. A more specific agreement takes precedence over this one.

This agreement also refers to and includes other disclosures we may provide to you, including (1) product information, (2) rate information, (3) banking services and fees, and (4) other disclosures, agreements, and amendments that we may provide to you. All may contain information on fees that apply to your accounts.

## DEFINITIONS:

Here are some important terms that we use throughout this agreement:

**Account:** Any deposit account, such as a checking or savings account, you have with us that is covered by this agreement.

**ACH (Automated Clearing House):** An electronic deposit to, or withdrawal from, your account that we receive or send through the "automated clearing house" network. Common examples include a direct deposit of payroll and a one-time or recurring payment to a utility company.

**ATM (Automated Teller Machine):** An electronic device that provides many of the same services as a teller, including withdrawals and deposits. An ATM may be described in several different ways in this agreement. **Enhanced ATM:** An ATM that offers expanded services over traditional ATMs. When you use an Enhanced ATM, you will have access to all of your personal checking, savings, Chase Liquid® and credit card accounts, regardless of whether the accounts are linked to your card. **Staffed ATM:** An Enhanced ATM located inside a branch lobby and that you use during the branch's posted business hours.

**Available balance:** Your previous day's balance plus any pending credit transactions (excluding pending debit card purchase returns), such as ACH direct deposits minus:

- Pending charges such as debit card purchases, electronic payments or other transactions that we are legally obligated to pay or have already paid,
- Amount of deposits that are not yet available for withdrawal under our Funds Availability Policy,
- Any holds on your balance, such as holds on funds to comply with court orders or other legal requirements.

**Business day:** Every day except Saturdays, Sundays and federal holidays. Some branches may close on a business day due to an emergency or to observe a state holiday.

**Check:** A written order to pay a specific amount of money drawn on, payable through, payable at or processed by a bank or other depository institution. If a check is sent or returned as an electronic image or as a substitute check, it is still considered a check.

**Debit card transaction:** Any purchase or bill payment using your debit card. A debit card transaction may be either an everyday (not recurring) purchase transaction or a recurring payment, such as a monthly bill.

**Direct deposit:** An automatic electronic deposit made through the ACH network to your account by someone else, such as an employer issuing payroll or a government paying benefits.

**Hold on your account:** Any amount of money that is in your balance but that you cannot withdraw because of delayed funds availability, a court order or other reasons. A hold may be placed for more than your balance.

**Item:** Any check, ACH, funds transfer, teller cash withdrawal, ATM withdrawal, debit card purchase, fee, charge or other amount that is added to or subtracted from your balance.

**Overdraft/Overdrawn:** A negative balance, or the amount by which all the items presented to us on a business day exceed the available balance.

**PIN:** A four-digit personal identification number that you either select or request us to randomly generate and mail to you. A PIN is needed to have full use of a debit card and ATM card.

# General Account Terms

## A. Deposits and Checks You Cash

### 1. Direct deposits; notice of electronic deposits

When we receive an electronic deposit to your account, the only notice you will receive from us is on your next statement. You may visit chase.com or Chase Mobile® and use Account Alerts, or call us to confirm that we have received a deposit.

If the bank that sent an electronic deposit to your account tells us it was a mistake, or was intended for another customer or account, we may deduct the amount from your balance without investigating.

### 2. Endorsements

An endorsement is a signature, stamp or other mark made on a check to transfer the check to another person. If a check you deposited doesn't have your endorsement, we may endorse it for you or treat the check as if we had endorsed it. Either way, the effect will be as if you had endorsed the check. Also, any deposited check that appears to contain your stamped or facsimile endorsement will be treated as if you had actually endorsed it. We are not bound by any conditional or restrictive endorsements on a check you cash or deposit, or by any endorsement "without recourse."

### 3. Endorsement requirements

To help ensure that checks you deposit or cash will be processed timely, your endorsement (and any other endorsement supplied by a co-payee) must be in the 1½ inch area that starts on the right side as viewed from the back. Payee or customer information must not be on any other part of the back of the check (look at the diagram):

If you don't endorse your check properly and it causes us a loss, cost or expense, you have to pay that amount to us.



### 4. Deposit records and receipts

We may rely on the account number on any deposit slip or similar record we receive, even if that account number is associated with a name that's different from the name you've provided. It's not our responsibility to detect any inconsistency between the account number you provide and the name.

If you make a deposit, we may provide a receipt, but the amount on your deposit receipt is based entirely on the deposit slip you complete. We may confirm the funds you deposit and, after review, may adjust your account for any errors including any errors on your deposit slip.

For business accounts, we are not required to adjust your account for discrepancies of $2 or less. We may not adjust your account unless you notify us of the discrepancy within one year of the date of your account statement that shows the deposit. If you do not notify us of the error during this notice period, the deposit amount will be considered final. This means that if the actual amount deposited was less than the amount declared on the deposit receipt, the difference will become your property and if the actual amount deposited was more than the amount declared on the deposit receipt, the difference will become our property.

If we give you a receipt for a CD that you decide not to open or we give you a receipt for a deposit that you then cancel, the receipt is void and you may not claim those funds.

### 5. Night depository and large cash deposits

Any of our employees may open and count any deposit that a teller didn't count in front of you, including night depository deposits and large cash deposits, and you agree not to dispute that employee's determination of the amount you deposited.

If you use our night depository, you are responsible for any disappearance, theft or loss of any envelope, bag or money before we issue a written receipt for the deposit.

### 6. Our right to refuse deposits

We may refuse a deposit, or part of a deposit, at any time. We also may refuse a deposit after initially accepting it. We can reverse any amount we've added to your balance for a deposited check and send the check on a collection basis even after we've taken physical possession of the check. We will not be liable to you for refusing a deposit, even if it causes us to decline any transactions you have already made. If we refuse a deposit, we may take a check on a "collection basis," which means we won't add funds to your balance until we've actually been paid for the check.

### 7. When you can withdraw funds you've deposited

Generally, for checking and savings accounts, you may withdraw funds the next business day after the business day you deposit them. But in some cases you may not. Please see the *Funds Availability Policy* for details.

If funds from a deposit become available and you can withdraw them, that does not mean the check or other item you've deposited is "good," has "cleared," or has been paid by the paying bank. It's possible that the item will be returned unpaid months after we've made the funds available to you and you've withdrawn them. No one, including our employees, can guarantee to you that a check will not be returned.

## 8. Transactions in a foreign currency

Any transaction we conduct for you in a foreign currency, such as sending or receiving a wire transfer to or from another country, depositing a foreign check, or exchanging foreign currency in our branches, will use an exchange rate. Currency exchange is only available at a limited number of branches and in certain currencies. The exchange rate we use may include a spread, commissions, or other costs that we, our affiliates, or our vendors may charge in providing foreign currency exchange to you. The exchange rate will vary depending upon the type of transaction being conducted, the dollar amount, the type of currency, the date and time of the exchange, and whether the transaction is a debit or credit to your account. The exchange rate you pay will be less favorable than the exchange rate for institutions that is usually quoted in newspapers or online services.

We are not required to accept for deposit checks that are drawn on a non-U.S. bank or payable in a foreign currency. We may accept those checks on a collection basis without your specific instruction to do so. We can reverse any amount we've added to your balance and send the check on a collection basis even after we've taken physical possession of the check. Our Funds Availability Policy does not apply to any foreign check, whether we accept it for deposit or on a collection basis. The actual amount you receive for checks payable in a foreign currency will be determined at the exchange rate for such items that's in effect when we're paid for the check. If a check is returned later for any reason, we will subtract the amount of the check and any charges from other banks from your balance. We will use the applicable exchange rate in effect at the time of the return, which may be different from the exchange rate originally used for the deposit.

## 9. Depositing substitute checks

A substitute check is a copy of a check that is the legal equivalent of the original check. You may receive a substitute check, such as when a check you deposited is returned unpaid. If you deposit a substitute check and we suffer a loss, cost or expense as a result, you will have to pay us that amount.

## 10. Depositing remotely created checks

A remotely created check is created by the payee and not signed by the account holder. It states that the account holder authorized the check. If you deposit a remotely created check, you guarantee it was authorized by the account holder for payment in the amount it shows.

## 11. Our responsibility for collecting deposits

If you deposit or cash a check, or we send one for collection, we act only on your behalf. Our only responsibility is to exercise reasonable care. We will not be liable for the lack of care of any bank or third party we use to collect checks, or for checks lost during shipping. We may send checks to any bank or to the entity on which the check was written in our customary manner. We may have agreements with other banks regarding times and methods for collecting or returning items.

If we lose a check, you agree to use reasonable efforts to help us locate or replace it.

Although we attempt to identify and prevent fraudulent transactions, we have no duty to you to determine whether any check you deposit or cash is forged, counterfeit, altered, improperly endorsed or otherwise improper.

## 12. Our right to charge back deposited or cashed items

If you deposit or cash a check or other item and (1) the paying bank returns it to us unpaid; (2) the paying bank or the issuer of a check demands that we repay them because the check was altered, forged or unauthorized, is missing a signature or endorsement, or has a forged endorsement; or (3) the sending bank or the originator of an item demands that we return the item because it was unauthorized, sent to the wrong account number or procured by fraud, we may pay the return or demand, and subtract the funds from your balance. If a deposited or cashed item is returned, we will charge you a Deposited Item Returned Fee or a Cashed Check Returned Fee. If we have reason to believe that any of the events in the previous sentence has occurred or may occur or that the check or other item should not have been paid or may not be paid for any other reason, we may place a hold on the funds or move them to a non-customer account until we determine who is entitled to them.

If you deposit a check or other item in your trust account (including any attorney trust account) and it is returned, we may charge your trust account or an account in your name, or charge part of the check to each, even if you have already withdrawn the funds.

## B.  Checks, Withdrawals, Transfers and Other Account Charges

## 1. Withdrawals and transfers from your account

We may subtract from your balance the amount of any check or other item that you or any person you authorize created or approved. We may require you or any person you authorize to provide us with identification, documentation or information that's acceptable to us before allowing the transaction.

## 2. Checks and other documents you use

We're not responsible for losses or delays that result from improper printing on checks or other account documents that you obtain through

someone other than us. We may refuse to accept for deposit or to pay checks that we cannot process or photograph using our customary equipment.

## 3. Protecting your checks

You must protect your checks and other account documents and information from theft and unauthorized use. You must write your checks in a way that prevents someone else from completing, altering or adding to them without your authorization. If you become aware that any checks or other documents and information, such as statements, have been lost or stolen, you must notify us immediately. If you fail to do any of these things, such as leaving your checks where they can easily be stolen, we are not responsible for any losses that may result.

## 4. Incomplete, future-dated, conditional or stale-dated checks

You agree not to write a check that's incomplete or tries to limit the time or method of payment with a condition, such as "Void after 180 days" or "Valid only for $1,000 or less." We have no duty to discover, observe or comply with such checks. If we pay a conditional check, the conditions do not apply to us. We may choose to pay or not to pay a stale-dated check (dated more than six months before it is presented), regardless of how old it is. If we pay it, you will be responsible for the check. We may pay any future-dated check submitted for payment.

## 5. Multiple signatures

We are not required to comply with any multiple-signature requirement, either on personal or business accounts, even if your signature card specifies that multiple signatures are required or you have otherwise instructed us to do so. A multiple-signature requirement is for your internal control purposes only.

## 6. Facsimile signatures

We may pay a check bearing any form of facsimile or computer-generated signature. If you use a facsimile or computer-generated signature, or provide a signature card authorizing any such signature, you will be solely responsible for any check bearing a similar signature, regardless of your negligence or whether the signature was the same one you previously used.

## 7. Check cashing

If a person who is not our deposit or loan customer tries to cash your check at any of our branches, we may charge them a fee or refuse to cash it. We may also require that they provide us identification we deem acceptable.

## 8. Large cash withdrawals

We may place reasonable restrictions on when and how you make any large cash withdrawal. We may also require that you sign a document releasing us from any liability if you are robbed or assaulted. We may refuse the withdrawal request if you do not agree with these conditions.

## 9. Review of checks and signatures

Check payment is highly automated, and we pay millions of checks every day. Although we inspect some checks, you agree that reasonable commercial standards don't require us to do so. If we return a check because we believe it doesn't match your signature on file with us, we're not liable to you even if you authorized the check. If the numeric amount on a check doesn't match the amount written out in words, we may select either one when paying it. We have no duty to prevent a check from being presented more than once.

## 10. Notice that a check has been deposited or cashed

If we're notified that a check drawn on your account has been deposited or cashed at another bank, we may place a hold on your account for the check amount, which may cause other items to overdraw the account. If the amount of the check identified in the notice exceeds your balance at the time we receive the notice, we may notify the other bank of that fact.

## 11. Account numbers on funds transfers

If you instruct us to send a funds transfer, such as a wire or ACH transfer, we and every other bank involved in the transfer may rely on any bank number or account number you provide. If the funds transfer instruction gives both a bank number or account number and a name, and the name identifies a different person from the bank or account owner identified by number, we and other banks that handle the funds transfer may still rely exclusively on the number. We have no duty to detect any inconsistency between the bank number or account number and the name.

## 12. Fees

You agree to pay all fees applicable to your account. We provided you a schedule of fees when you opened your account, and we will notify you of any changes. We may subtract these fees from your balance, even if the fee makes your balance negative.

## 13. Stop payments

Any owner or authorized signer of an account may order us to stop payment on a check, and we will charge a Stop Payment Fee. However, your stop payment will not be effective if we have already certified, paid or otherwise become responsible for the check. For example, we can't stop payment on a check we've already cashed or a deposited check where the funds have already been withdrawn. Refer to the *Electronic Funds Transfer Service Terms* for how to place a stop payment on recurring electronic payments.

To stop payment on a check, you must give us an oral or written stop payment order using the phone number listed on the back cover of this agreement, or in person at a branch, or through chase.com. So we can identify the item, you must give us the exact account number and either:

- The exact check number or a range of check numbers
- The payee name and the exact amount of the check
- The payee name and range of amounts of the check (only available when speaking to a bank employee).

Generally, we will complete your request as soon as we receive your instructions.

For personal accounts, your stop payment request lasts for one year even if the check is presented more than once unless you cancel your stop payment request. However, you may place a new stop payment order, which will be effective for one calendar year from the day you place the additional order. An additional Stop Payment Fee will be charged.

For business accounts, you may place a stop payment for either:

- One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment-Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement, or
- One calendar year (this option is not available for stop payments initiated on chase.com).

We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. When the stop payment order expires, we may pay the item and have no duty to notify you.

We are not required to accept a stop payment on a cashier's check, teller's check (official check) or certified check, unless you provide us a sworn statement—in a form we deem acceptable—that the check is lost, stolen or destroyed. After you place a stop payment, we are not required to refund the check amount or issue a replacement check until at least 90 days after the issue date. We are not required to refund the check amount or issue a replacement check if the check is presented for payment within 90 days after the issue date.

## 14. Limits on savings account withdrawals
Federal regulations limit the number of withdrawals and transfers out of your savings account. In this agreement, a savings account means an account with limited withdrawal privileges, including a money market account. During any monthly statement period, you may make no more than six withdrawals or transfers (for example by check, ACH, telephone, Internet or Overdraft Protection transfer) out of these accounts. However, this limit does not apply to withdrawals made at a branch or at an ATM, by mail (by check payable and mailed to you) or by messenger. If we don't send a monthly statement, a monthly statement period means a calendar month. We are required to ensure that you comply with this limit. If you exceed this limit after we've notified you of a violation, we will change your account to one we choose that doesn't limit withdrawals, and it may be an account that pays less or no interest. For Retirement Money Market accounts, we may either refuse or delay any withdrawal request that violates these requirements.

## 15. Savings Withdrawal Limit Fee
If you make more withdrawals or transfers out of your savings account than your account terms permit in a monthly statement period, we will charge a Savings Withdrawal Limit Fee. This fee is based on all withdrawals and transfers, not only those that are limited by federal regulation.

## 16. Our right to require advance notice of withdrawals
For all savings accounts and all personal interest-bearing checking accounts, we reserve the right to require seven days' prior written notice of withdrawal.

## 17. Death or incompetence of account owner
Tell us immediately if any account owner dies or is declared incompetent by a court. We may act as if all owners are alive and competent until we receive notice otherwise.

After we receive notice of death or incompetence, we may freeze your balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release your funds until we receive any documents we reasonably request to verify your death or incompetence, as well as who is entitled to the funds. If we have any tax liability because of paying your balance to your estate, the estate will be responsible for repaying us the amount of that tax. If an account owner authorizes any transaction, but it's not presented for payment until after that owner dies, we are authorized to pay the transaction. If you owe us a debt at the time of your death, we are authorized to exercise our right of setoff (our right to apply funds in one account to the debt associated with another account) or security interest rights against the funds credited to your balance after your death. We have these rights even if a surviving joint owner, a "payable on death" payee, or a beneficiary of an "in trust for" or "trustee for" account has rights to the account.

## C. Overdrafts and Fees; Overdraft Protection; Setoff and Security Interest

### 1. Overdrafts

We may pay or decline to pay any item if your available balance is less than the amount of that item plus all other items received but not yet paid. We will decline any requested ATM withdrawal unless your available balance at the time is equal to or more than the amount of the requested withdrawal. Even if we've paid overdraft items before, we are not required to do it in the future. Special rules for everyday debit card transactions are described in the *Electronic Funds Transfer Service Terms*. We rely on the transaction coding sent to us by the merchant or other third party in determining whether the transaction is "everyday" or recurring.

We look at your balance only once to decide if the item would cause an overdraft.

Generally, for each business day, we will first add deposits to your account. Second, we will subtract wire transfers, everyday debit card transactions, online banking transactions, ATM withdrawals, teller cash withdrawals, and checks you wrote that are either cashed or deposited at a teller station by a Chase employee, in the order in which they are authorized, withdrawn, cashed or deposited. Lastly, we will subtract all other items, including checks you wrote that are either cashed or deposited at an ATM, starting with those having the highest dollar amount and moving to the lowest. We reserve the right to use a different order in certain states.

It's your responsibility to avoid overdrawing your account.

### 2. Your responsibility to repay overdrafts

You must immediately pay the amount of any overdraft along with any fees that apply. If you don't, you may be charged additional fees or interest. We also may report you to consumer reporting agencies, close your account, or both. This could affect your ability to open accounts with us or other banks in the future.

You authorize us to use the money from any subsequent deposits to your account to pay any overdraft and resulting fees. Subsequent deposits include any federal or state benefit payments that you choose to deposit in any account (including direct deposit of Social Security benefits). You understand and agree that if you don't want your benefits applied in this way, you may change your direct deposit instructions at any time.

You agree to pay all costs and expenses we incur in collecting any overdraft. We may still pursue collection of the amount you owe (including suing you) after it is charged off.

### 3. Insufficient Funds, Returned Item, and Extended Overdraft fees

We will charge a fee for any item presented on a business day when your account is overdrawn, whether or not we pay the item. If we pay it, we will charge an Insufficient Funds Fee. If we return it, we will charge a Returned Item Fee. The fee will be listed as a Returned Item Fee if we initially decide to return the item but later decide to pay it. Special rules for everyday debit card transactions are described in the *Electronic Funds Transfer Service Terms*. If your account becomes overdrawn, you can avoid these fees by making a deposit or transferring funds from another Chase account to cover the overdraft before the business day ends, such as when a branch closes, and by 11 p.m. Eastern Time (8 p.m. Pacific Time) for an ATM or when using the Transfer Money option on chase.com or Chase Mobile. Other methods may use different cutoff times; for example, Chase QuickPay® with Zelle℠ is 10 p.m. Eastern Time (7 p.m. Pacific Time). If you deposit a check, this assumes we do not place a hold and the check is not returned unpaid.

We may limit the number of Returned Item and Insufficient Funds Fees we charge for a business day. We will charge an Extended Overdraft Fee for any overdraft balances that you haven't repaid promptly, we may charge interest for any overdraft, or we may do both.

Refer to your Fee Schedule for information about what fees apply and how fees are calculated for your account.

### 4. Overdraft Protection

Overdraft Protection allows you to link one of your accounts as your backup account to your checking account to help pay an overdraft. If your checking account does not have enough money, we will use the available funds from your backup account to authorize or pay transactions.

**Establishing or Canceling Overdraft Protection:** Any owner of both the checking account AND the backup account may enroll in Overdraft Protection without the consent of other owners. Any owner of the checking account OR the backup account may cancel Overdraft Protection without the consent of other owners. A backup account can provide Overdraft Protection for more than one checking account, but a checking account can have only one backup account. A personal checking account may be linked to a Chase personal savings account; and a business checking account may be linked to a Chase business savings account or a business line of credit in good standing. We may cancel your Overdraft Protection service at any time by sending you written notice. Your request to add or cancel Overdraft Protection will become effective within a reasonable time after approval.

**Transfers:** We will make one Overdraft Protection transfer per business day. If you have enough available funds in your backup account, we will automatically transfer enough to bring your checking account balance to zero. If you do not have enough available funds in your backup account to bring your checking account balance to zero, but you have enough available funds to pay one or more transactions and/or your previous day's negative balance, we will transfer that amount. If the amount transferred does not bring your checking account balance to zero, your checking account will become overdrawn and you may be charged Insufficient Funds or Returned Item Fees. If we authorize

your transaction, we will leave the funds in your backup account until we pay the transaction, which may take several days. However, if you use those funds before the transaction is paid there will not be available funds to make the transfer and your checking account may become overdrawn and charged an Insufficient Funds Fee. The available balance for a savings account is determined at the time that we authorize a transaction or at the end of business day processing. The available balance for a business line of credit is determined at the end of the previous business day processing. We are not required to notify you if your funds are available but the backup account becomes blocked, for example if the account is dormant, purged, restricted or not in good standing. Refer to the section Restricting your account; blocking or delaying transactions on page 14 for additional information. Transfers will appear on your statement for both accounts.

Withdrawals and transfers out of your savings account, including Overdraft Protection transfers, are limited by federal law. In addition, Overdraft Protection transfers may result in Savings Withdrawal Limit Fees. Both of these limits are explained in more detail on page 6.

## 5. Setoff and security interest

If you owe a debt to us or any of our affiliates (either now or in the future), you grant us a right of setoff to, and a security interest in, all of your accounts to secure the debt. Debts include any overdrafts or fees you owe. If the debt is due or overdue, we may use the funds in any of your accounts to pay all or part of the debt. If your account is a joint account, we may use the funds in the joint account to pay the debt of any account owner. Our security interest will be governed by Uniform Commercial Code Article 9, whether Article 9 applies by its terms or not. We do not have to give you any prior notice to apply the funds. You expressly agree that our rights extend to any electronically deposited federal or state benefit payments (including Social Security benefits). If you don't want your benefits applied in this way, you may change your direct deposit instructions at any time with the person or organization paying the benefits. The right of setoff does not apply if the debt is created under a personal credit card plan.

If any federal benefits or other payments are deposited to your account after you become ineligible to receive them, we may setoff against any of your accounts to recover the payments if we're obligated to return funds to the payor.

## D. CDs

A certificate of deposit, or CD, is a deposit account with us for a specified period of time. This disclosure covers both retirement and non-retirement CD products. By opening your CD, you agree to keep the amount deposited (principal) on deposit.

Here are a few things you should know about CDs:

**Term:** The term is the number of days, months or years you agree to leave your money in the account.

**Maturity date and grace period:** The maturity date is the last day of your CD's term. The grace period is the 10 days after the maturity date for CDs with a term of 14 days or longer. On the maturity date or during the grace period you can change the term of your CD, make additional deposits (for non-retirement CDs only), or withdraw your CD principal without paying an early withdrawal penalty.

**Automatically renewable CD:** An automatically renewable CD will renew on the maturity date for the same term unless we notify you otherwise or you change or close the account. Once your CD renews, any reference to the maturity date means the last day of the new term. For the renewal term, your CD will earn interest for the term and amount at the standard interest rate unless you qualify for the relationship interest rate. If your CD is closed during the grace period, it will not earn interest after the maturity date.

**Single maturity CD:** A single maturity CD will not automatically renew on the maturity date and won't earn or be paid interest after that date.

**Interest:** We use the daily balance method to calculate interest on your CD. This method applies a periodic rate each day to your balance. Interest begins to accrue on the business day of your deposit. Interest for CDs is calculated on a 365-day basis, although some business CDs may calculate interest on a 360-day basis. The Annual Percentage Yield (APY) disclosed on your deposit receipt or on the maturity notice assumes interest will remain on deposit until maturity. On maturities of more than one year, interest will be paid at least annually and the amount(s) paid will be reported to the IRS each calendar year.

You may withdraw any paid or credited interest without penalty during your CD's term or at maturity. After the maturity date and grace period, interest will become principal of the renewed CD. A withdrawal will reduce earnings.

**Early withdrawal penalties: There is a penalty for withdrawing principal prior to the maturity date.**

**For Personal CDs:**

- If the term of the CD is less than 24 months, the early withdrawal penalty is 1% of the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- For terms 24 months or more, the early withdrawal penalty is 2% of the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest.
- The amount of your penalty will be deducted from principal.

**For Business CDs:**

- If the term of the CD is less than 365 days, the early withdrawal penalty is equal to $25 plus 1% of the amount withdrawn.
- For terms of 365 days or more, the early withdrawal penalty is equal to $25 plus 3% of the amount withdrawn.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest.
- The amount of your penalty will be deducted from principal.

**Waiving early withdrawal penalties.** We will waive early withdrawal penalties in these circumstances:

**For Personal CDs:**

- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a retirement CD owner;
- A court's determination that a CD owner is incompetent;
- Re-titling of a CD (excluding a retirement CD) to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs; and
- For retirement CDs, if the owner is 59½ or older and the funds are taken as an IRS-reportable distribution via cash, check, or deposit or transfer to a non-retirement account. This waiver does not apply if the transfer is to a retirement account at another financial institution.

We will also waive early withdrawal penalties under the circumstances described below. However, if these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made, the withdrawal penalty will apply.

- Disability of an owner of the CD (excluding a Retirement CD);
- For retirement CDs, if the owner is under age 59½ and one of the reasons defined by sections 72(t) and 530 of the Internal Revenue Code applies, such as payment of qualified education expenses or first-time home purchase expenses; and
- For retirement CDs, if the owner is withdrawing an excess annual retirement contribution amount and any corresponding earnings.

**For Business CDs:**

- Death of a CD owner or a grantor of a revocable family/living trust;
- A court's determination that a CD owner is incompetent;
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs;
- Disability of a CD owner. However, if these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made, the withdrawal penalty will apply.

## E. Statements, Notice of Errors, and Other Notices

### 1. Statements and notices

We will make available an account statement for checking and savings accounts monthly, unless the product information for your account indicates otherwise. If your account has had no activity, during the monthly statement period, other than the payment of interest, we may not make a statement available.

A "statement period" means the period covered by your account statement. If you receive a statement monthly, the monthly statement period may or may not be a calendar month, but in most cases it won't be more than 32 days or less than 28. The specific dates covered by your account statement will be on your statement.

Checking and savings statements are available through chase.com or Chase Mobile unless the product information indicates otherwise. You will receive statements by mail unless you choose paperless statements. We have made the statement available to you on the day we notify you that the paperless statement is available or we mail your paper statement. If your address or email is not valid, the statement will be considered available to you on the day we generated it.

If you receive paper statements, we will send statements to the current address listed on our records. Statements will be sent via standard U.S. mail. We may change your mailing address of record if we receive an address change notice. If we do so, we'll notify you.

We may send you other notices related to your account. If you are enrolled with chase.com or Chase Mobile, some notices may only be available electronically. We send some notices only in paper form. We'll send only one statement or notice for any account, even if it has more than one owner. You agree that sending the statement or notice to one owner qualifies as sending it to all owners, even if all owners don't have access to the mailing address of record for the account.

## 2. Notice of errors, forgeries and unauthorized signatures

You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example, paperless statements) if:

- An item that you did not authorize or that is altered is listed on the statement;
- Your account statement contains any errors; or
- You did not receive your scheduled statement.

You must notify us in writing of any unauthorized, improper or missing endorsements within six months after the account statement is mailed or made available.

You must provide us with all information we need to investigate the alleged error or item. You must also file any police reports and provide any supporting affidavits and testimony we reasonably request.

If you do not comply with the requirements above, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the item or errors. In addition, if you fail to notify us of any unauthorized item within 30 days (14 days in New York) after we mail, or in any other way make available, a statement that lists an unauthorized item, we are not required to reimburse you for unauthorized items by the same person that we pay after that time. These requirements do not apply to personal account transactions covered by the *Electronic Funds Transfer Service Terms*. You also have certain rights under federal law for substitute checks; please see *Substitute Checks and Your Rights* for more information.

## 3. Options for receiving checks

We offer three choices for how you can view or receive copies of checks you've written or authorized:

- "Check safekeeping" means we keep images of your checks, which are available through chase.com. We do not include your paid checks or images of them with your statement. Some accounts require check safekeeping.
- "Image statement" means you will receive images of the front of your paid checks on your account statement.
- "Check enclosure" means we return legal copies of your paid checks with your account statement. This feature is not offered on all accounts.

If you have multiple personal checking accounts on a single statement and one of them uses check enclosure, all others will use check safekeeping. If you have multiple business checking accounts on a single statement, you may choose check enclosure for any or all of them. If you have multiple checking accounts on a single statement and any account uses image statement, then all will use image statement, unless the terms of the other accounts require check safekeeping. You agree that when we send a statement we have made the check available to you, even if we do not send originals or images with the statement. We will destroy original checks after a reasonable period of time we determine.

If for any reason we can't provide a copy of your check, you agree that we will not be liable for more than the face amount of the check. We cannot provide originals or images of checks that are sent to us as electronic transfers. Additionally, other banks may send us electronic images instead of original checks, so we can provide a copy of the image, but not the original check.

## F. Forms of Account Ownership

## 1. Personal accounts

THE TYPE OF ACCOUNT OWNERSHIP MAY CHANGE HOW YOUR FUNDS ARE PAID IF YOU DIE, EVEN IF YOUR WILL STATES OTHERWISE. PLEASE CONSULT YOUR ESTATE PLANNING ADVISOR OR ATTORNEY ABOUT YOUR CHOICES.

If your account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes. Ownership of your account is determined by the most current signature card. However, we are authorized to rely on the account ownership information contained in our deposit system unless we are notified that the most current signature card and the deposit system contain different information.

### i. Solely owned account

When only one individual is listed as the owner of an account, we will treat the account as a solely owned account.

### ii. Joint accounts

When two or more people are listed as owners of a personal account, the account is a "joint account" and each owner is a "joint owner."

If your joint account becomes overdrawn, you're liable for the full amount of the overdraft, regardless of whether you initiated or benefited from the item(s) that caused the overdraft.

If one joint owner requests that we not pay items authorized by a different joint owner, we may block the account, but we are not required to do so. That means we will refuse to pay all items, including items authorized by the owner making the request. If we block the account,

we may not release the block unless all joint owners agree in writing to remove it. No request to block the account will affect items that we paid before the request. If we decide not to block the account, all joint owners remain responsible for items subtracted from the account.

Any joint owner may close the account. We may choose whether or not to act upon other instructions of any joint owners, including adding another owner to the account, without the signature of the other joint owners. We may also pay all or any part of the funds in the account to a court or government agency if we receive a garnishment, levy or similar legal process that identifies any of the joint owners.

### a. Joint account with rights of survivorship

If a joint account has rights of survivorship, and one joint owner dies, the account will be paid to the surviving joint owners. The estate of the deceased owner will have no rights to the account. If there is more than one surviving joint owner, the account will continue as a joint account with rights of survivorship among the remaining owners. If an account is designated "JAWROS" or "JTWROS," it has rights of survivorship.

### b. Joint account with no right of survivorship (also called "tenants in common")

If a joint account does not have rights of survivorship, and one joint owner dies, that owner's interest passes to the owner's estate. Either the surviving joint owners or the deceased owner's estate may withdraw the funds at any time, and we have no responsibility for determining the respective interests of the owners. If an account is designated "Tenants in common" or "JTIC," it does not have rights of survivorship.

### c. When survivorship rights apply

Except as otherwise stated in this paragraph, a joint account has rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created without these rights. Accounts in Louisiana do not have rights of survivorship. Accounts in Texas do not have rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created with these rights.

If a joint account also contains a "payable on death" or "in trust for" designation, the account always includes a right of survivorship and is payable to the beneficiary only upon the death of the last surviving owner, except as stated in paragraph d. below.

### d. Marital account (Wisconsin only)

If one owner of a marital account dies, the survivor is entitled to 50% of the account funds and the estate of the deceased is entitled to the other 50%. If a marital account contains a payable on death designation, the POD beneficiary is entitled to the deceased spouse's 50% share. However, we have no responsibility to determine the respective interests of the owner and the POD beneficiary.

### e. Tenants by the entirety (Florida only)

A Florida joint account owned solely by two spouses is a "tenants by the entirety" account unless the signature card indicates otherwise. We are not required to determine whether an account is a tenants by the entirety account before responding to a garnishment or other legal process. We may assert our right of setoff or security interest in a tenants by the entirety account in order to collect debts of either owner.

## iii. "Payable on death" account

If you establish your account payable on death to one or more beneficiaries, the account is a "POD" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer POD accounts in all states.

## iv. "In trust for" (informal trust) account

If you establish your account as in trust for ("ITF") or as trustee for one or more beneficiaries without presenting formal trust documents, we may treat the account as an "ITF" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer ITF accounts in all states.

## v. Convenience account

If you have a convenience account, you are its sole owner, but you authorize an additional signer to write checks or authorize other items. You are solely responsible for the actions of the additional signer (grandfathered accounts only).

## vi. Power of attorney

A power of attorney is a document you sign that authorizes someone else, called the agent, to act on your behalf. If you sign a power of attorney, the agent can sign on your behalf and do anything you could do regarding the account, including withdrawing or spending all of the money in the account. Do not sign a power of attorney unless you trust the agent to act in your best interest. If you choose to add an agent, you must provide a power of attorney form that we agree to accept. We may rely on a copy of an original power of attorney. We are not required to investigate the facts relating to any power of attorney provided to us on your behalf, including whether your signature on the power of attorney is authentic or whether the agent continues to have authority. We may follow or refuse to follow the agent's instructions at any time, including

if we suspect fraud or abuse on your account, unless state law requires otherwise. We may also refuse an agent's request to become a joint owner or a beneficiary of an account, but we have no liability to anyone if we do so. We have no liability when we follow or refuse to follow any instructions from an agent, for example, if your agent misuses the authority you have given them.

### vii. Uniform Transfers to Minors Act/Uniform Gifts to Minors Act account

If you're the custodian of an account under a state's Uniform Transfers/ Gifts to Minors Act, you can't pledge it as collateral for a personal loan to you, or cash checks against it.

### viii. Representative payee/VA custodian account

If you open an account as a "representative payee" for someone who receives Social Security payments, or as a legal custodian, spouse payee or other custodian for someone who receives Veterans Administration payments, you agree not to permit any deposits to the account other than the designated payments. We are not required to determine whether you deposit other funds or whether any withdrawals or transfers from the account are for the support of the person for whose benefit the funds are paid. This person is called the beneficiary. If the beneficiary dies, you must promptly notify us and stop all further deposits to and withdrawals from the account. If the government demands that we return deposits made after the beneficiary's death and the account does not have enough funds to pay the demand, we may take the funds from any account you or the beneficiary owns.

### ix. Other fiduciary accounts

If you open an estate account, trust account, guardianship or conservatorship account, or other similar type of account, we reserve the right to require any documents we reasonably request to satisfy us that you are authorized to open and use the account, including withdrawing the funds. We do not have to permit any withdrawal from the account until we receive all requested documents. We have no fiduciary duties to you as the trustee, executor, guardian or conservator, or to the beneficial owners of the account.

## 2. Business accounts

If your account is a type listed under "Business Accounts" in our product information, you agree not to use it for personal purposes.

If our records list a business organization as the owner of an account, the account is payable to the business organization and not to any individual director, shareholder, member or partner. "Business organization" means a corporation, unincorporated association, limited liability company, partnership, or any other business, government or non-profit organization. We may rely on the accuracy and completeness of all resolutions, signature cards and other documents you deliver to us in connection with the account. If they state that a person is authorized to sign checks or otherwise initiate transactions on your account, that person is called a signer.

If the account owner is a sole proprietorship, that means that one person conducts the business as his or her own property, instead of through a business organization. A sole proprietor may also designate signers by appropriate documents. We may in some states allow a married couple to open an account as a sole proprietorship.

If you change your form of ownership or authorized signers, you must notify us when the change occurs.

A signer is authorized to endorse checks payable to the business. Endorsements "for deposit" may be written or stamped. A signer is also authorized to sign checks drawn against your account. We are authorized to pay checks without asking how the checks were issued or how the proceeds will be used, even if the check is payable to the person who signed the check.

A signer is authorized to instruct us to close accounts or do anything else involving any account, and to sign any agreements or documents relating to accounts or other business.

We may, although we are not required to, cash checks payable to or accept "less cash" deposits from a business organization.

If you open an attorney trust account, including an IOLTA or similar account, you authorize us to notify the appropriate state agency if the account is overdrawn or checks are dishonored, if the applicable state requires notice of those events.

## 3. Linked accounts

You may link your qualifying accounts to your checking account to help you avoid some fees and get relationship interest rates. However, deposit accounts opened with Private Bank and Private Wealth Management are not qualifying accounts. An account may be linked to only one checking account.

We may automatically link accounts or we may provide some of the benefits you would be eligible for had you requested your accounts to be linked. If we don't, you may ask us to link your accounts. Your account information may be made available to any other owner on any of the linked accounts. If the checking account to which your other accounts are linked closes for any reason, it is your responsibility to request any remaining eligible accounts to be linked. If we determine your accounts are no longer eligible for linking, we may delink them and we are not required to notify you if we do.

If you choose to link your accounts to other accounts for which you serve as trustee or custodian (fiduciary), your account may receive a financial benefit, which could be a violation of your fiduciary duties. We are not responsible for your decision to link fiduciary accounts. You should carefully consider this decision and consult with your legal advisor if necessary.

Refer to your product information to determine which qualifying accounts are eligible to be linked, any additional requirements and the benefits from linking accounts.

## 4. Combined statements

Checking, savings and CD accounts with at least one common owner may be combined on a single statement, either automatically or at your request. If accounts are included on a combined statement and you don't want that, notify us and we'll separate the statements. That change will affect only future statements.

Linked accounts do not have to be on a combined statement to receive the benefits of linking, and combining accounts on a single statement does not mean that the accounts are linked.

Each owner of each account listed on the statement can request a copy of a statement and will be able to view all account activity for all accounts on that statement through chase.com or Chase Mobile.

## G. Interest on Checking and Savings Accounts

When you open a checking or savings account that pays interest, we will provide you a rate sheet stating the current interest rate and Annual Percentage Yield for your account. The rate sheet is considered a part of this agreement.

Your account has a variable interest rate. That means we may change the interest rate and Annual Percentage Yield as often as we choose, without limits and without notice. Interest begins to accrue on the business day we receive credit for your deposit. For cash, wire transfers and electronic direct deposits, interest begins to accrue on the business day of your deposit.

We use the daily balance method for calculating interest. This method applies a daily periodic rate to the balance in your account each day, which may be based on your balance (also called your present or ledger balance) or collected balance as explained in the product information for your account. The collected balance is the balance of all deposits in your account on which we have received credit for the deposited funds (determined by the availability schedule of our Federal Reserve Bank for checks and similar items). We reserve the right not to pay interest on any deposited item that is returned to us unpaid.

Interest is credited and compounded monthly. However, Retirement Money Market accounts with interest distributions will not compound, and interest will be credited on the distribution date. Unless otherwise stated in your product disclosure, interest is computed on a 365-day basis. We pay interest only in whole cents. Therefore, at the end of each interest payment period (usually monthly), any fractional amount of interest less than half of one cent will be rounded down and any fractional amount of interest equal to half of one cent or more will be rounded up to the next whole cent.

## H. Closing Your Account

Either you or we may close your account (other than a CD) at any time for any reason or no reason without prior notice. We are not required to close your account at your request if you have pending transactions, the account is overdrawn or your account is subject to legal process (such as a garnishment, attachment, execution, levy or similar order). In those cases, we will restrict your account against all future withdrawals other than under legal process until pending transactions are paid or returned, the balance is no longer negative, and any legal restriction has been released. After we restrict your account in preparation for closing, we will not pay any additional interest on the account. We may automatically close your account if the balance is $0 or negative. Either you or we may close your CD account on any maturity date without cause.

We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks, but we may reopen your account if we receive a deposit. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third party reporting agencies of accounts closed for misuse, such as kiting or overdrafts.

## I. Other Legal Terms

## 1. Telephone and electronic communication

We may record and/or monitor any of our telephone conversations with you. If we do record, we do not have to keep the recordings, unless the law says we must.

When you give us your mobile number, we have your permission to contact you at that number about all of your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences, or change them on chase.com. If you give us your email address, you agree that we may send servicing messages (such as fraud alerts and hold alerts) related to your accounts to that address.

We may send communications electronically, such as by email or text message, rather than through U.S. mail or other means, unless the law says otherwise.

## 2. Adverse claims

If there are conflicting instructions or there is any dispute regarding your account, we may take any action described in the following section or we may place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

## 3. Restricting your account; blocking or delaying transactions

There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:

- Your account is involved in any legal or administrative proceeding;
- We receive conflicting information or instructions regarding account ownership, control or activity;
- We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
- We suspect that any transaction may involve illegal activity or may be fraudulent;
- We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money-laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or
- We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.

We will have no liability for any action we take under this section.

## 4. No waiver

If we fail to exercise any right, that doesn't mean that we waive that right or any other right, and we may still enforce all of our rights in the future.

## 5. Changes to the agreement

We may change the terms of this agreement, including any fees and features of your account, at any time. We will notify you about changes at least 30 days in advance. We may direct you to a branch or chase.com for the content of any changes or the revised agreement unless the law requires a different method. For automatically renewable CDs, we will notify you before the renewal date, and changes will be effective on the renewal date. If we transfer your account to a different business unit within the bank, we may give notice in the same manner and provide you a different deposit agreement to govern your account. You agree that notice of these changes may be provided to any joint owner. By maintaining your account after the effective date of any change, you agree to the change. We are not required to send you notice of interest rate and Annual Percentage Yield changes for variable rate accounts or notice of changes in printing fees for documents (such as checks).

We may change or terminate this agreement without notice to comply with any appropriate federal or state law or regulation.

## 6. Rules governing your account

This agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located.

Here's how we determine where your account is located:

- If you opened your account in person, it is located in the state where you opened it;
- If you opened your account by mail, Internet or other remote means, and you resided in a state where we had branch offices at that time, it is located in that state; but if you resided anywhere else your account is located in Ohio.

Any provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care.

Transactions in your account are also subject to applicable clearinghouse and Federal Reserve rules and regulations. We will not be liable for anything we do when following your instructions. In addition, we will not be liable if we don't follow your instructions if we reasonably believe that your instructions would expose us to potential loss or civil or criminal liability, or conflict with customary banking practices. **WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

If this agreement conflicts with any statements made by one of our employees or by our affiliates' employees, this agreement will govern.

## 7. Sub-accounts

For accounting purposes, all checking accounts consist of two sub-accounts: 1) a transaction sub-account where all deposits, withdrawals and fees are posted, and 2) a savings holding sub-account, where available balances above a certain level are transferred daily. Funds will be retransferred to your transaction sub-account to meet your transactional needs; however, all balances in the holding sub-account will be transferred to the transaction sub-account with the sixth transfer in any calendar month or monthly statement period.

Both sub-accounts are treated as a single account for purposes of your deposits and withdrawals, earning interest, access and information, tax reporting, fees, etc.

## 8. Research, legal process and requests for information

If we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a garnishment, attachment, execution, levy or similar order. We do not have to determine whether the legal process was validly issued or enforceable. If a hold is in effect, we will continue to charge any applicable fees even though the account cannot be closed. We also may remove your Overdraft Protection if a hold is placed, but you may ask us to relink your accounts after the hold is removed. As permitted by law, we will deduct from your balance a Legal Processing Fee or costs and expenses we incur in complying with the order, or both.

If any action, including administrative proceedings, garnishment, tax levies, restraining orders or another action is brought against you or your account, you will be liable to us for any loss, cost or expense (including attorneys' fees) resulting from our compliance with any legal process.

If we receive any subpoena, court order or request for information or documents from a government entity or arbitration panel relating to your account, we are authorized to comply with it. If we are required to answer a subpoena or similar order requesting records of your account, we may charge you a Research Fee, less any amount we are paid by the person issuing the subpoena before we deliver our response.

## 9. Permitted time for filing a lawsuit

You must file any lawsuit or arbitration against us within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time. This limit is in addition to limits on notice as a condition to making a claim. If applicable state law does not permit contractual shortening of the time during which a lawsuit must be filed to a period as short as two years, you and we agree to the shortest permitted time under that state's laws.

We abide by federal and applicable state record retention laws and may dispose of any records that we retained or preserved for the period set forth in these laws. Any action against us must be brought within the period that the law requires us to preserve records, unless applicable law or this agreement provides a shorter limitation period. Any action against us on an automatically renewable CD must be brought within the time that the law requires us to preserve records based on the stated maturity date in the most recent record of the CD.

## 10. Location of legal proceedings

If you file any lawsuit or other legal proceeding against us that's connected in any way to your accounts or services, you agree to do so in an appropriate court in the state where your account is located. If we file any lawsuit or legal proceeding that is connected in any way to your accounts or services, you consent to jurisdiction and venue in an appropriate court in the state where your account is located. If either party chooses to have disputes resolved by arbitration, the section entitled *Arbitration* governs the process and location of the arbitration proceedings.

## 11. Pre-judgment interest rate

If either you or we are awarded a judgment against the other in connection with your account, the rate of interest earned before judgment on the judgment amount will be the rate of interest the account earned during that period unless state law requires a different rate. If the account is not interest-bearing, the rate will be the lowest generally available rate for a personal interest-bearing checking account.

## 12. Arbitration

You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).

This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

**What claims or disputes are subject to arbitration?**

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

**Can I (customer) cancel or opt out of this agreement to arbitrate?**

You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account. If you want to opt out, call us at 1-800-935-9935 or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

**What about class actions or representative actions?**

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:

1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

**Does arbitration apply to Claims involving third parties?**

Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding.

**How does arbitration work?**

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The arbitrator will decide the Claim in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. A single arbitrator will conduct the arbitration and will use applicable substantive law, including the Uniform Commercial Code, consistent with the FAA and the applicable statutes of limitations or conditions precedent to suit, and will honor claims of privilege recognized at law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

**Is the arbitrator's decision final? Is there an appeal process?**

The arbitrator's decision will be final and binding on the parties. A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

**Who will pay for costs?**

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay, you may request that we pay or reimburse them, and we will consider your request in good faith.

**How do I (customer) file an arbitration claim?**

Rules and forms may be obtained from, and Claims may be filed with, JAMS (1-800-352-5267 or www.jamsadr.com) or the AAA (1-800-778-7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

## 13. Assignment of agreement and successors

This agreement will be binding on your personal representative, executors, administrators and successors, and on our successors and assigns.

You may not assign, transfer or grant a security interest in your account to anyone other than us without our written consent. No assignment will be valid or binding on us, and we won't be considered to have knowledge of it, until we consent and note the assignment in our records. However, by noting the assignment, we do not have any responsibility to assure that the assignment is valid. Any permitted assignment of your account is subject to our setoff rights.

## 14. Authorization to share information

You authorize us to share information about you and your account with affiliates and third parties, unless the law or our Privacy Notice prohibits us from doing so. Please see our *Privacy Notice* for your choices about information sharing.

## 15. Referrals

If you request it, our employees may at times provide contact information about third parties, such as lawyers, accountants, or contractors who offer products or services to the public. Some of these third parties may be our customers. We provide this information only as a courtesy and convenience to you and the third party, but in some cases we may be compensated for a referral. We do not make any warranties or representations about the third parties or their products or services. If you choose to do business with any third party, that decision is yours alone, and we are not responsible for the third party's performance or to help resolve any dispute between you and the third party. Our employees may also receive compensation when you purchase a Chase product based on their referral.

## 16. Illegal activities

We strictly prohibit the use of any account to conduct transactions (including, without limitation, the acceptance or receipt of credit or other receipt of funds through an electronic funds transfer, or by check, draft or similar instrument, or the proceeds of any of the foregoing) that are related, directly or indirectly, to unlawful Internet gambling. The term "unlawful Internet gambling," as used in this Notice, shall have its meaning set forth in 12 C.F.R. Section Part 233, Section 132.2(bb). You agree not to conduct any transactions through the account that directly or indirectly involve or are related to unlawful Internet gambling, including, without limitation, the acceptance or receipt of any funds or deposits in connection therewith.

You also agree not to use your account for any other illegal activity. We may refuse any gambling transaction, whether lawful or not.

## 17. Inactive and unclaimed accounts

Each state has laws that govern when accounts are considered inactive or abandoned, and when we're required to send a customer's funds to the state. We encourage you to make sure your accounts remain active by making transactions, signing in to your account online or meeting with a banker. We'll mail you a letter to notify you before we transfer your funds to the state as abandoned property.

## 18. Our responsibility to obtain personal information

Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business who opens an account. We require the following information or documents as a condition to your opening an account:

- For a personal account: your name; residential address; date of birth; and Social Security number, driver's license or other identifying documents
- For a business account: your business name, taxpayer identification number and business address; the name, residential address, date of birth and Social Security number of each signer, so we can verify the signer's identity; and documents to verify the business's existence.

Our policies may require additional information about you or any person associated with you or with the account when or after you open the account to assure that we comply with "Know Your Customer" requirements. We may restrict or close your account if we are unable to obtain information in order to satisfy our "Know Your Customer" requirements. By opening an account with us, you confirm that neither you nor any beneficial owner of any account is covered by any sanctions programs administered or enforced by the U.S. Department of the Treasury, Office of Foreign Asset Control.

### 19. English language — Other language preferences

The terms of this agreement and the products and services we provide are governed by the English language. As a courtesy, we make some of our forms, disclosures and documents, including this agreement, available in languages other than English. However, many important bank documents, and some products and services related to this account, are provided only in English. If there is any difference in meaning between the English and non-English version of any of our documents, the English version applies and is available upon request.

# Substitute Checks and Your Rights

### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks, with a reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

### What are your rights as a consumer regarding substitute checks?

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, Insufficient Funds fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if applicable) within 10 business days after we receive your claim and the remainder of your refund (plus interest if applicable) no later than 45 calendar days after we receive your claim. We may reverse the refund (including interest) if we later determine the substitute check was correctly posted.

### How do you make a claim for a refund?

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us. You must contact us within 40 calendar days of the date that we mailed or otherwise delivered the substitute check or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

### Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- The following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, and the amount of the check.

# Electronic Funds Transfer Service Terms

We provide a variety of electronic funds transfer (EFT) services for deposit accounts. These include transactions that you make with a debit card or ATM card, and payments, deposits and transfers that you make by telephone, chase.com and other electronic methods. We may issue you a card or code to initiate EFTs.

### A. TYPES OF EFT SERVICES

### 1. ATM and Debit Cards

You may obtain an ATM card if you have a checking or savings account or debit card if you have a checking account. If you do not select a PIN when you request your card, we will mail you a randomly generated PIN. We may deactivate any temporary ATM card when you activate your debit card.

You can use your card as follows:

**At ATMs to:**

- Withdraw cash;
- Transfer money;
- Check your balances;
- Deposit cash or checks;*
- Make payments to qualifying Chase credit cards and loans;*
- Obtain a copy of recent account activity.*

Services marked with an asterisk (*) are available only at Chase ATMs, and all services may not be available at all Chase ATMs.

When you use an Enhanced ATM, you will have access to all of your personal checking, savings, Chase Liquid® and credit card accounts, regardless of whether the accounts are linked to your card. When linking multiple accounts to your card, one checking account and one savings account will be designated as primary. We also offer cards with limited functions for your deposit accounts, such as deposit-only business cards and prepaid cards that can be linked to a checking or savings account. Subject to the limited functions provided for each card, limited-function cards are also considered "cards" under this agreement.

You can use a non-Chase ATM only if it is in a participating network. Your primary checking and savings accounts will be accessible on that network, and your other linked accounts may be accessible. Outside the U.S., only your primary checking account is generally accessible. We may charge a Non-Chase ATM Fee. Balance inquiries and transfers will not incur a fee if done within 15 minutes of a withdrawal using the same card at the same ATM. If only transfers and inquiries are performed, only one Non-Chase ATM Fee will be charged. The owner of the ATM may also charge a fee. On some accounts, we will refund a certain number of these fees; however, if the ATM owner does not identify these fees in the information they send to us we will not be able to automatically refund the fee. If this occurs, please contact us.

**You can use your debit card (but not your ATM card):**

**At participating merchants to:**

- Purchase goods and services. Purchases are subtracted from your primary checking account. If you have arranged with your merchant to make recurring payments, you must notify the merchant if your card number or expiration date has changed or your debit card is closed. We may also provide the merchant or the participating network your new account number and expiration date.
- Withdraw cash while making a purchase using your PIN if the merchant permits the cash-back option.
- Send or receive payments from another person, or receive payments from a business by providing your Card number to third-party payment services.

**At participating financial institutions to:**

- Withdraw funds at a teller. Withdrawals are subtracted from your primary checking account. You will be charged a Non-ATM Cash Fee.

## 2. ACH Transactions

You can send or receive electronic transfers from or to your accounts by providing another party your checking account number and our routing number for the state where your account is located. We may transfer the funds by ACH or other similar networks. Electronic transfers require your authorization and may take various forms, such as:

- Direct deposits, such as employer payroll or government benefits;
- One-time or recurring charges to your account for bill payments;
- A "check conversion" transfer, where a merchant or other payee creates an electronic transfer from your paper check. The merchant may keep your check or return it to you.

## 3. Online Banking and Chase Mobile

You may use chase.com or Chase Mobile to view your account information, make deposits (Chase Mobile only), transfer funds between your Chase accounts, pay qualifying Chase loans or credit cards, or make payments from your account to third parties. Enroll for these services on chase.com or by downloading the Chase Mobile app for select mobile devices. You must agree to the additional disclosures and specific terms for using these services when you enroll.

## 4. Telephone Banking

You may use our automated customer service system or speak to a telephone banker to get your account information, transfer funds between your accounts with us, or pay qualifying Chase loans or credit cards. You must have a valid deposit or loan account and a valid password or PIN to use the automated system. Business account holders may also use a valid Taxpayer Identification Number (TIN).

### 5. Overdraft Protection Transfers

Transfers to and from your accounts for Overdraft Protection are also EFTs and subject to these terms.

## B. IMPORTANT INFORMATION AND AGREEMENTS ABOUT YOUR CARD

### 1. Authorizations and Holds

Most merchants ask us to authorize your purchase. When we give authorization to a merchant, we will reserve or place a hold on your balance, generally for three business days, to pay for your purchase. We may authorize or refuse to authorize a transaction based on a different amount than the authorization request, because some merchants request authorization for an amount that is unrelated to the actual amount of the purchase (such as self-service fuel).

For some types of purchases we may place a hold for a longer period. There are times—for example, at restaurants, hotels or car rental agencies—that merchants won't know the exact amount of your purchase when they request the authorization. If the authorization is more or less than your actual purchase amount, the hold may remain for a day or two even after your purchase amount has been subtracted from your balance. We will pay the purchase amount from your balance whenever the merchant sends it to us, even if the hold has expired.

### 2. Overdrafts

For personal accounts, unless you have notified us that you DO want us to pay debit card overdrafts at our discretion, we generally won't authorize an everyday debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Insufficient Funds Fee. For business accounts, if you have notified us NOT to pay overdrafts we generally won't authorize a debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Insufficient Funds Fee. If any other transaction overdraws your account, we will assess fees described in the *General Account Terms* and the Fee Schedule.

### 3. Canceling Your Card

We may cancel your card at any time without notice. You may cancel your card by calling us. If you do, please destroy it.

### 4. Our Right to Refuse Transactions

We can refuse to authorize any transaction when your card has been reported lost or stolen or when we reasonably believe there may be fraudulent, suspicious or illegal activity.

### 5. Foreign Exchange Transactions

The exchange rate applied to card transactions that occur in a different currency will be selected by the network that processes the transaction. The network will select from the range of rates available in wholesale currency markets or a rate mandated by the government that issues or controls the currency in that country on the date it processes the transaction. This rate may be different from the rate the network receives, may include a spread, commissions, and other costs that we, our affiliates or vendors charge in providing that exchange to you, and will be less favorable than the exchange rate for institutions that is usually quoted in the newspaper or online services. The processing date on which the exchange rate is applied may differ from the date you used your card.

We will add an Exchange Rate Adjustment Fee to the amount the network charged us for foreign currency transactions.

### 6. Debit or Credit Prompts at Terminals

If a merchant asks "Debit or Credit?" when you make a purchase, you can choose either one and your purchase will be subtracted from your primary checking account.

- If you select Debit, you must also enter your PIN.
- If you select Credit, you may have to provide a signature except for some smaller amounts and when paying for self-service fuel.

### 7. ATM Safety and Safeguarding Your Account Information

**Be safe at ATMs.** We advise you to be aware of your surroundings before, during and after any ATM use. Here are some additional tips:

- Choose an ATM that is well lit.
- Don't use an ATM that looks unusual or altered. If you suspect the ATM isn't working properly, cancel the transaction and find another machine.
- At a walk-up ATM, minimize transaction time by having your card ready to use. At a drive-up ATM, keep your car engine running and lock your doors.
- Stand between the ATM and anyone waiting to use the machine or cover your hand so others can't see your PIN or the transaction amount.
- As soon as your transaction is complete, remove your card from the ATM, and then put away your money, receipt, and card.
- Contact the police or a security officer if you see any suspicious activity at the ATM. If you think you're being followed, go to a busy area and immediately contact the police.

**Keep your PIN confidential.** Never give your PIN to anyone, and don't write it down. In addition, to keep your card information safe:

- Change your PIN every few months by visiting a branch. Use a PIN that others can't easily figure out. For example, don't use your birthday.
- To change your PIN (or if you forget your PIN), visit any Chase branch or request a new PIN at chase.com.

**Protect your debit card or ATM card as you would a credit card or cash.**

**Notify us immediately if your card is lost or stolen,** or if you discover any other error. The sooner you report a problem, the sooner we can take precautions to ensure your card isn't misused.

## C. LIMITATIONS ON TRANSFERS, AMOUNTS, AND FREQUENCY OF TRANSACTIONS

To protect your balance, we place daily dollar limits on ATM withdrawals and card purchases, even if your available balance is higher than the daily limit. We provided your card limits when we gave you your card.

However, we may:

- Allow transactions that exceed your limits.
- Temporarily reduce your limits without notice, for security purposes.
- Change your limits (we'll notify you if we do).

Your ATM withdrawal limits may be different depending on which type of ATM you use:

- When you use a Staffed ATM, the following limitations apply and are separate from all other limits:

  **For personal accounts:** You can withdraw up to $3,000 each day. This separate limit does not apply to a Privileges card.
  **For business accounts:** Each cardholder can withdraw up to $3,000 each day from all linked accounts of each business. This separate limit does not apply to an Associate card.

- When you use an Enhanced ATM, the following limitations apply:

  **For personal accounts:** All withdrawals made with any of your ATM, debit or prepaid cards count toward every card's daily withdrawal limit.
  **For business accounts:** All withdrawals made with any cardholder's ATM or debit cards for the same business count toward every card's daily withdrawal limit.

- When you use non-Chase ATMs and Chase ATMs that are not Enhanced, you can withdraw up to the card's daily withdrawal limit. Withdrawals using other cards will not count toward that card's daily withdrawal limit.

You are allowed a limited number of withdrawals from your savings account. See Limits on savings account withdrawals for details.

Your card will be restricted if we consider your account to be inactive or dormant.

## D. RECEIPTS AND STATEMENTS

You will receive or have the option to receive a receipt at ATMs, teller stations and merchant locations each time you make a transaction. However, for certain small dollar transactions at merchant locations, you may not receive a receipt.

We will provide a monthly statement if you have an electronic funds transfer in that period. If you do not, we will provide at least quarterly statements, unless your account is considered inactive.

To confirm that you have received a direct deposit, review your balance and recent transactions through chase.com, Chase Mobile, at an ATM, or call us.

## E. IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS

If you think your statement is wrong, or if you need more information about a transaction listed on it, call or write us at the telephone number or address at the end of this agreement.

**For personal accounts only, the following procedures apply:**

We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your balance within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our

investigation. If you opened your account less than 30 days before the date of the suspected error, the 10-business-day period is extended to 20 business days. If you opened your account less than 30 days before the date of the suspected error or the transaction occurred at a point-of-sale location or outside the U.S., the 45-day period is extended to 90 days.

If you call us, we may require that you send us your complaint or question in writing within 10 business days. If we do not receive it within 10 business days, we may not credit your balance.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**For business accounts,** our practice is to follow the procedures described above, but we are not legally required to do so. For example, we are not required to process a claim if you don't notify us within 30 days after we send or make available a statement showing the transaction, to give provisional credit, or to finalize the claim during the periods stated above.

## F. OUR LIABILITY FOR FAILURE TO COMPLETE TRANSACTIONS

If we do not complete a transaction from your personal account on time or in the correct amount, we will be liable for your losses or damages. However, we are not liable for any failed transaction if you do not have enough money in your balance to cover a transaction, if the ATM or device does not have enough cash or is not working properly, if circumstances beyond our control prevent the transaction, if the merchant authorizes an amount greater than the purchase amount, or if there are other exceptions stated in this agreement or as provided by law. We are not liable for failure to complete a transaction on a business account if we send you notice that the transaction was not completed.

## G. PREAUTHORIZED (RECURRING) TRANSFERS AND STOP PAYMENTS

You may use your account or debit card to make recurring payments. If these recurring payments vary in amount, the payee will tell you the amount and date of the next payment at least 10 days before the payment due date. You may choose to get this notice from your payee only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that you set.

You can stop a recurring payment by telephone, chase.com, Chase Mobile or at a branch before the scheduled payment date by providing us sufficient information for the type of payment.

1. If you provided your card number for the preauthorized transfer, you must give us the exact card number. We will close the card and open a new one to replace it.

2. If you provided your account number and routing number (ACH direct debit) for the preauthorized transfer, you must give us your account number and the exact name of the payee. We will also need the exact amount of the payment, a range of amounts or an instruction to block all payments from the named payee. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. If you see a "pending" payment for a different amount or for a different payee than the stop payment you placed, contact us before the end of the business day so we can try to refuse payment.

Your stop payment is effective until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer.

For business accounts, your ACH stop payment will either be effective:

• Until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer, or
• One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment-Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement.

3. If you set up your recurring bill payments or transfers through chase.com, you can cancel pending and future payments on chase.com or Chase Mobile.

4. If you previously set up recurring account transfers in the branch, you can only cancel those pending and future transfers in the branch.

We will generally process a stop payment request as soon as we receive it. If you place a stop payment three or more business days before the transfer is scheduled, and we still pay, we will be responsible for your losses or damages.

## H. DISCLOSURE OF ACCOUNT INFORMATION TO THIRD PARTIES

Information about your account or the transactions you made will be disclosed to third parties:

• As necessary to complete transactions;
• In connection with the investigation of any claim you initiate;
• To comply with government agency, arbitration or court orders;
• With your written permission;
• As permitted by our Privacy Notice.

## I. NOTICE OF YOUR RIGHTS AND LIABILITIES

**For personal accounts only:**

Tell us AT ONCE if you believe your card, PIN or code has been lost or stolen. Calling us is the best and fastest way of keeping your possible losses to a minimum.

If you tell us within two business days, you can lose no more than $50 if someone used your card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500. If your statement shows electronic funds transfers that you did not make, tell us right away. If you do not tell us within 60 days after the statement was sent or otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time.

If a good reason (such as a long trip or a hospital stay) kept you from telling us, let us know. We will extend the time periods.

**For business accounts only, you agree:**

1. To assist us in the investigation of claims for unauthorized transactions and related prosecution by completing the appropriate statements and reports reasonably requested by us;

2. To notify us promptly in writing if any user of a card is no longer employed by you or authorized to conduct business on your behalf;

3. That by allowing anyone to use your card, or by failing to exercise ordinary care (such as storing your PIN with your card or selecting your birthday as your PIN), you will be responsible for all authorized and unauthorized transactions;

4. That all of the provisions of the Deposit Account Agreement, including liability limitations and the requirement that you give us notice of unauthorized items within 30 days, apply to your EFT services.

**Special Provisions for Card Transactions (Zero Liability Protection) for personal and business accounts:**

You are not liable for any unauthorized transactions, including transactions made at merchants, over the telephone, at ATMs or on the Internet, if you notify us promptly.

However, these special provisions do not apply where you were grossly negligent or fraudulent in the handling of your account or card, where you have given someone else your card, card number or PIN, or where you delay reporting unauthorized transactions for more than 60 days (30 days for business accounts).

## J. FEES

Fees for all EFT services are disclosed in our Fee Schedule and product information.

## K. SERVICES NOT COVERED BY THIS PART; SEPARATE AGREEMENTS

For personal accounts, EFT services described in the *Electronic Funds Transfer Service Terms* do not include wire transfers and any transactions that are not covered by Consumer Financial Protection Bureau Regulation E.

For business accounts, wire transfers and other services not specifically described in this disclosure are governed by the *General Account Terms* or by separate agreements.

We may offer additional EFT services besides those described in the *Electronic Funds Transfer Service Terms* that have separate agreements and disclosures.

# Account Alerts and Text Banking

If you receive or otherwise use Account Alerts or text banking, you agree to the following terms. If you are enrolled with chase.com, the terms of the Online Service Agreement control the terms of these services instead.

- We may use a telephone number, email address or other delivery point we have in our records for you or other contact information that you provide to us for these services so we can send you certain information about your account. You may be automatically enrolled to receive certain Account Alerts via email. To manage your Alerts preferences or cancel Account Alerts, use chase.com or Chase Mobile or speak to a Telephone Banker.
- We will send Account Alerts or text banking messages through your service provider, who will act as your agent and deliver them to you. Delivery of alerts may be delayed for various reasons, including service outages affecting your phone, wireless, or Internet provider; technology failures; and system capacity limitations.
- We do not charge for Account Alerts or text banking, but message and data rates may apply. **To cancel text banking services, send STOP to 24273 at any time.** For help or information on text banking, send HELP to 24273 or contact us at 1-877-242-7372.

- Account Alerts and text banking are provided for your convenience and do not replace your monthly statement, which is the official record of your account. Anytime you review your balance, keep in mind it may not reflect all transactions, including recent debit card transactions or checks you have written.
- You understand we may not encrypt information when it is sent to you through these services. This information may include personal or confidential information about you, such as account activity or the status of your account.

You understand we are not liable for losses or damages from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in Account Alerts or information sent through text banking. If we suffer a loss, cost or expense because you provide an incorrect telephone number, email address or other delivery point, or you violate applicable laws, you have to pay that amount to us.

## *Funds Availability Policy*

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** Wire transfers, electronic direct deposits and cash deposits will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit.

In most cases when you deposit checks drawn on a Chase account:

- At a teller station, funds from these deposits made with an employee will be available on the same day we receive your deposit;
- At an ATM, some or all funds from these deposits will be available on the same day we receive your deposit.

Once funds are available, you may withdraw them or use them to pay checks and other items.

**For Chase Analysis Business Checking (with or without Interest):**

**Same-day availability:** Wire transfers, electronic direct deposits, and cash deposits made with a banker or at an ATM will be available on the day we receive your deposit.

**Next business day availability:** Funds from the following deposits are available on the first business day after the day we receive your deposit:

- U.S. Treasury checks that are payable to you;
- Checks that are drawn on us.
- The following items, if you make the deposit in person to one of our employees:

  a. State and local government checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;

  b. Cashier's, certified, and teller's checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;

  c. Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders that are payable to you.

**Second business day availability:** Funds from all other deposits are available no later than the second business day after the day we receive your deposit. Available funds may be withdrawn in cash or used to pay checks and other items.

**When Your Deposit Is Received:**

If you make a deposit with a teller at one of our branches on a business day, we will consider that day to be the day of your deposit. If you make a deposit on a business day before our cutoff time at a Chase ATM, we will consider that day to be the day of your deposit. However, if you make a deposit on a day that is not a business day, or make an ATM deposit after the ATM cutoff time, we will consider the deposit to have been made on the next business day.

- For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays and federal holidays.
- For deposits and transfers at most ATMs, the cutoff time is 11 p.m. Eastern Time (8 p.m. Pacific Time). For ATMs with an earlier cutoff, the ATM screen will notify you of the cutoff time.
- Deposits placed in a night depository are considered received when we remove them from the night depository; we will remove deposits no later than the next business day.
- Branches in some locations may be closed on business days in observance of a state holiday or because of an emergency, and deposits made at a night depository when those branches are closed will be considered received on the next business day when the branch is open.
- All deposits made by mail and addressed to Chase without using a specific branch name and street address will be considered received by the Chase-By-Mail facility in Louisville, Kentucky, on the date the deposit is received by that facility. Chase-By-Mail will not accept cash deposits.

**Longer Delays May Apply:**

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** In some cases, we may not make all of the funds that you deposited by check available by the first business day after the day of your deposit. Funds may not be available until the second business day after the day of your deposit. However, at least the first $200 of these deposits will be available on the first business day after the day of your deposit. If you will need the funds from a deposit right away, you should ask us when the funds will be available, but further review of the deposit after we receive it may still result in delayed availability.

**For all accounts:** Funds you deposited by check may be delayed for longer than two business days under the following circumstances:

- We believe a check you deposited will not be paid;
- You deposited checks totaling more than $5,000 in any one day;
- You redeposited a check that has been returned unpaid;
- You have overdrawn your account repeatedly in the last six months; or
- There is an emergency, such as failure of communications or our systems.

If we delay availability for one of these reasons, funds may not be available until the seventh business day after the day of your deposit.

If your check deposit is made with one of our employees or at an ATM and we decide at that time to delay your ability to withdraw funds, we will tell you then. If we decide to delay availability of your funds after you complete your deposit, we will mail you a deposit hold notice by the business day after we decide to take that action.

**Special Rules for CDs and Retirement Money Market Accounts:**

Generally, funds you deposit will be available within one business day except when you deposit checks that total more than $5,000 in a business day. The amount exceeding $5,000 will be available no later than the seventh business day after the day of your deposit. However, we are not required to let you withdraw principal from a CD before it matures.

**Special Rules for New Accounts:**

If you are a new customer, the following special rules may apply during the first 30 days your account is open:

- Funds from deposits of the first $5,000 of a business day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,000 will be available on the seventh business day after the day of your deposit. If your deposit of these checks (other than U.S. Treasury checks) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of your deposit; and
- Funds from all other check deposits will be available no later than the seventh business day after the day of your deposit.

**Holds on Other Funds:**

If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available on the day they would have been available if you had deposited the check.

## *Privacy Notice*

Rev. October 2014

| FACTS | WHAT DOES CHASE DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br>▪ Social Security number and income <br>▪ account balances and transaction history <br>▪ credit history and payment history |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Chase chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chase share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| To limit our sharing | ▪ Call 1-888-868-8618 – our menu will prompt you through your choice(s). For operator relay assistance, first dial 711 **or** <br>▪ Visit us online: **chase.com/privacypreferences** <br><br>**Please note:** <br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. <br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| **Questions?** | Call 1-888-868-8618 – our menu will prompt you through your choice(s). For operator relay assistance, first dial 711. |

26

**Page 2**

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | The JPMorgan Chase & Co. family of companies. A partial list of its U.S. consumer financial companies is located at the end of this document. |

## What we do

| | |
|---|---|
| **How does Chase protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We authorize our employees to get your information only when they need it to do their work, and we require companies that work for us to protect your information. |
| **How does Chase collect my personal information?** | We collect your personal information, for example, when you<br>■ open an account or make deposits or withdrawals from your account<br>■ pay your bills or apply for a loan<br>■ use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies<br>■ *Our affiliates include companies with a Chase or J.P. Morgan name and financial companies such as J.P. Morgan Securities LLC* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Nonaffiliates we share with can include companies such as retailers, auto dealers, auto makers and membership clubs* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *Our joint marketing partners include categories of companies such as insurance companies* |

## Other important information

**State Laws:**

VT: Accounts with a Vermont mailing address are automatically treated as if they have limited the sharing as described on page 1. For joint marketing, we will only disclose your name, contact information and information about your transactions.

NV: We are providing you this notice pursuant to Nevada law. If you prefer not to receive marketing calls from us, you may be placed on our Internal Do Not Call List by calling 1-800-945-9470, or by writing to us at P.O. Box 659752, San Antonio, TX 78265-9752.

For more information, contact us at the address above, or email Privacy.Info@JPMChase.com, with "Nevada Annual Notice" in the subject line. You may also contact the Nevada Attorney General's office: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; telephone number: 1-702-486-3132; email BCPINFO@ag.state.nv.us

CA: Accounts with a California mailing address are automatically treated as if they have limited the sharing with nonaffiliates as described on page 1. CA residents are provided a CA notice for additional choices.

**Who is providing this notice?**

JPMorgan Chase Bank, N.A.          Chase Insurance Agency, Inc.          Chase Bankcard Services, Inc.
J.P. Morgan Securities LLC          Chase Bank USA, N.A.

Separate policies may apply to customers of certain businesses, such as J.P. Morgan Private Bank.

## *How to Contact Us:*

**Personal Accounts:**

| | |
|---|---|
| Main phone number: | 1-800-935-9935 |
| Spanish: | 1-877-312-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com |

**Business Accounts:**

| | |
|---|---|
| Main phone number: | 1-800-242-7338 |
| Spanish: | 1-888-622-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com/business |

**Chase Private Client:**

| | |
|---|---|
| Main phone number: | 1-888-994-5626 |
| International calls: | 1-405-235-4847 |
| Website: | chase.com/privateclient |

**Chase Mobile or Online Banking:**    1-877-242-7372

**Deaf and Hard of Hearing:**

| | |
|---|---|
| Operator Relay calls: | |
|     Personal Accounts: | 1-800-935-9935 |
|     Business Accounts: | 1-800-242-7338 |
| Direct TTY calls: | 1-800-CHASETD (1-800-242-7383) |

**All Written Correspondence:**    JPMorgan Chase Bank, N.A.
PO Box 659754
San Antonio, TX 78265-9754

**Electronic Funds Transfers (EFTs):**    In case of errors or questions about your EFTs, or if you believe your debit card has been lost or stolen, call us at 1-866-564-2262 or write:
Chase
PO Box 659809
Internal Mail TX3-7849
San Antonio, TX 78265-9109



CHASE PRIVATE CLIENT





JPMorgan Chase Bank, N.A. Member FDIC
© 2017 JPMorgan Chase & Co.

Catalog **REDAA1117**
Effective 11/12/2017